PATRICK SEXTON and Margaret Sexton v. S. S. SUTHERLAND
and Frank Windmueller.

(164 N. W. 278.)

**Homestead — adverse claims — action to determine — husband and wife —
may be joined as defendants — legal title in husband's name.**

A wife may properly be joined with her husband as joint plaintiff in an
action brought to determine adverse claims to a homestead, even though the
legal title thereto is held in the husband's name.

Opinion filed July 21, 1917.

Appeal from District Court of Stark County, *Crawford,* J.

From an order overruling a demurrer to the complaint as to the
plaintiff Margaret Sexton, the defendant Sutherland appeals.

Affirmed.

*C. H. Starke,* for appellants.

Issues of fact must be tried at the regular term of the district court,
if the trial is by jury; otherwise at a regular or special term. Comp.
Laws 1913, § 7609.

The manner in which cases are brought on for trial is provided by
statute. Comp. Laws 1913, § 7610.

Our statute provides that any person having an estate in, interest
in, or lien or encumbrance upon the land, may maintain an action
to determine adverse claims to lands. The action being statutory, only
such designated persons may maintain it. Power v. Bowdle, 3 N. D.
107, 21 L.R.A. 328, 44 Am. St. Rep. 511, 54 N. W. 404; Buxton v.
Sargent, 7 N. D. 503, 75 N. W. 811; McHenry v. Kidder County, 8
N. D. 415, 79 N. W. 875; Hooper v. Henry, 31 Minn. 264, 17 N. W.
476.

The legal title to the land here in question is in the name of the

---

NOTE.—As to whether wife is necessary party to suit concerning homestead, see
note in 81 Am. Dec. 451.

As to effect of mortgage of homestead by husband alone, see note in 68 Am. Dec.
323.

On effect of conveyance or encumbrance of homestead by one spouse only, see
note in 95 Am. St. Rep. 909.

husband. The only right of Margaret Sexton to maintain this action is predicated upon the fact that she is the wife of the legal owner and that the land is their homestead. The question raised by the demurrer is whether or not these facts give her such "an interest" in the land as will permit her to maintain this action, or whether the action can be maintained jointly by husband and wife. Conrad v. Adler, 13 N. D. 202, 100 N. W. 722; San Francisco v. Ellis, 54 Cal. 72; Walton v. Perkins, 28 Minn. 413, 10 N. W. 424.

The homestead right is an exemption, not an "estate."

"It is difficult to understand how the right of an owner of particular land to hold such land exempt from liability for debts can be in any sense an estate." Tiedeman, Real Prop. 1121; Black v. Curran, 14 Wall. 463, 20 L. ed. 849; McDonald v. Crandall, 43 Ill. 231, 92 Am. Dec. 112; Waples, Homestead, chap. 9.

The statutory restraint upon alienation in the case of the married man does not change the character of the right in any respect. Arnold v. Waltz, 53 Iowa, 706, 36 Am. Dec. 248, 6 N. W. 40; Greenwood v. Maddox, 27 Ark. 649.

"The wife cannot properly be said to have any estate in the homestead property of her husband during his life, and the application of the term "estate" to her statutory right to prevent any alienation by him, or to her contingent right to succeed, on his death, to the homestead privilege, is to be avoided." Tiedeman, Real Prop. 506; Gee v. Moore, 14 Cal. 472; Pounds v. Clarke, 70 Miss. 263, 14 So. 22; Creath v. Creath, 86 Tenn. 659, 8 S. W. 847; Godfrey v. Thornton, 46 Wis. 677, 1 N. W. 362; Burns v. Keas, 21 Iowa, 257; Jenness v. Cutler, 12 Kan. 515; Const. § 208.

Neither by statute nor court decision has this state ever recognized any right of the wife in the homestead of her husband during his lifetime.

The word "interest" as used in our statute means some present right of property in the land itself, either legal or equitable. In this statute such expression is grouped with others which can only bear the meaning above stated. They are "estates," "liens," "encumbrances," all of which expressions mean some live, present, existing interest in lands. Tiedeman, Real Prop. p. 506, Act 1860, § 1; Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 83 N. W. 245.

The right of the wife in the homestead of her husband during his lifetime is not an "interest" in the land, and she cannot maintain an action to determine adverse claims. Williams v. Santa Clara Min. Asso. 66 Cal. 193, 5 Pac. 85; Comp. Laws 1913, § 8144; 32 Cyc. 1348–E; Grider v. American Freehold Land & Mortg. Co. 99 Ala. 281, 42 Am. St. Rep. 58, 12 So. 775.

*Casey & Burgeson,* for respondent.

The court did not err in ordering that the case stand for trial upon ten days' notice, as a condition for allowing an answer, after overruling a demurrer. Comp. Laws 1913, § 7481; Walker v. Maronda, 15 N. D. 63, 106 N. W. 296.

It is held that courts do not abuse their discretion when they order an answer filed upon the date of their ruling upon demurrer. Davis v. Peck, 12 Colo. App. 259, 55 Pac. 192.

In adverse claim actions, "an action may be maintained by any person having an estate or interest in or lien or encumbrance upon real property." Comp. Laws 1913, § 8144.

The interest of the wife in the homestead is fully as great as that of the husband, and this is true even though the legal title remains of record in the name of the husband during his lifetime. The wife may unite with the husband in an action to set aside a conveyance or mortgage of the homestead premises in which she did not join. Shoemaker v. Collins, 49 Mich. 595, 14 N. W. 559; Revalk v. Kraemer, 8 Cal. 66, 68 Am. Dec. 304; Watts v. Gallagher, 97 Cal. 47, 31 Pac. 626; McDonald v. Sanford, 88 Miss. 633, 117 Am. St. Rep. 758, 41 So. 369, 9 Ann. Cas. 1; Larson v. Reynolds, 13 Iowa, 579, 81 Am. Dec. 444.

The homestead of the family in this state is absolutely exempt from attachment or mesne process, and from levy and sale upon execution. Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684; McDonald v. Sanford, 88 Miss. 633, 117 Am. St. Rep. 758, 41 So. 369, 9 Ann. Cas. 1.

The homestead belongs to and is for the benefit of the family. Larson v. Reynolds, 13 Iowa, 579, 81 Am. Dec. 444.

The wife may join with the husband in an action to quiet title to the homestead. Rasmussen v. Stone, 30 N. D. 451, 152 N. W. 809; Engholm v. Ekrem, 18 N. D. 185, 119 N. W. 35; Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592.

The wife's right or "interest" in the homestead does not depend upon the will or caprice of the husband. .Comp. Laws 1913, § 5627.

CHRISTIANSON, J. This is an appeal from an order of the district court of Stark county overruling a demurrer to the complaint of the plaintiff Margaret Sexton.

The action is brought to determine adverse claims to a certain lot in the city of Dickinson. The plaintiffs filed the following joint complaint:

"The plaintiffs for their complaint herein allege and show to the court: (1) That the plaintiff Margaret Sexton is the wife of the plaintiff Patrick Sexton, and joins with him in this action for the purpose of quieting title in the lands and premises hereinafter described, which is and for more than six years last past has been the homestead of herself and husband; that this action is for the purpose of freeing the title to such premises from all liens and encumbrances of whatever description claimed by the defendants, which lien and encumbrances have grown out of mortgages signed by her husband without being either signed or acknowledged by herself, the said Margaret Sexton.

"(2) That the plaintiff Patrick Sexton is the owner in fee simple of the following described real property, situated in the county of Stark and state of North Dakota, to wit:

"Lot two (2) in block two (2) in Hilliard and Manning's second addition to the city of Dickinson, according to the plat thereof on file and of record in the office of the register of deeds, Stark county, North Dakota.

"(3) That the defendants claim certain estates or interest in or liens or encumbrance upon the same, adverse to plaintiffs.

"Wherefore, plaintiffs pray:

"1. That defendants be required to set forth all of their adverse claims to the property above described, and that the validity, superiority, and priority thereof be determined.

"2. That the same be adjudged null and void, and that said defendants be deemed to have no estate or interest in, or lien or encumbrance upon, said property.

"3. That plaintiff's title be quieted to such lands and premises as

against the defendants or either of them, and that the defendants be forever debarred and enjoined from further asserting the same.

"4. That they have such other and general relief as to the court seems just, together with the costs and disbursements of this action."

The defendant Sutherland demurred to the complaint as to the plaintiff Margaret Sexton, on the ground that it does not state facts sufficient to constitute a cause of action. It is conceded that the complaint states a cause of action so far as the plaintiff Patrick Sexton is concerned.

Under our statute a misjoinder or excess of parties plaintiff does not constitute a ground for demurrer. Olson v. Shirley, 12 N. D. 106, 96 N. W. 297. Whether a defendant may single out one of several joint plaintiffs and demur to the complaint as to such plaintiff, on the ground that the complaint does not state a cause of action, is by no means free from doubt. It is at least an unusual procedure, and one not to be encouraged, because if a joint complaint states a cause of action in favor of any of such plaintiffs it tenders an issue for trial. Ordinarily the only parties likely to be injured because unnecessary persons have been made parties to an action are such parties themselves. If these persons do not object to being made parties, as a general rule, other persons have no cause for complaint. The mistake, if any, in joining unnecessary parties may be corrected on the final decree, as the judgment will be so framed as to work full and substantial justice, and obviously no relief will be allowed to any plaintiff who has failed to allege or establish sufficient facts to show that he is entitled thereto. See Brown v. Lawton, 87 Me. 83, 86, 32 Atl. 733; 30 Cyc. 141. See also Webster v. Kansas City & S. R. Co. 116 Mo. 114, 22 S. W. 476.

The splitting of a joint complaint in the manner adopted in this case tends to encumber the records of this court with needless appeals. It seems that the legislature intended that this practice should not be pursued, otherwise it would doubtless have made misjoinder or excess of parties a ground for demurrer. As this question has not been raised, however, and as both parties have argued the appeal on its merits, we will dispose of the question they have presented.

The sole contention on the part of the appellant is that, where the legal title to a homestead is held in the name of the husband, the wife

has not a sufficient interest therein to maintain an action to determine adverse claims.

Section 8144, Compiled Laws 1913, provides: "An action may be maintained by any person having an estate or interest in or lien or encumbrance upon real property whether in or out of possession thereof, and whether said property is vacant or unoccupied against any person claiming an estate or interest in or lien or encumbrance upon the same for the purpose of determining such adverse estate, interest, lien or encumbrance."

That courts of equity have inherent original jurisdiction to entertain suits to quiet title is elementary. 17 Enc. Pl. & Pr. 279. And "the broad grounds on which equity interferes to remove a cloud on title are the prevention of litigation, the protection of the true title and possession, and because it is the real interest of both parties, and promotive of right and justice, that the precise state of the title be known if all are acting bona fide." 32 Cyc. 1306. And hence, "a court of equity, on the sole ground of preventing multiplicity of suits, will entertain an action to quiet title where there are a number of persons interested in it, and a great many actions at law would be necessary to conclude the title." 32 Cyc. 1307.

The statutory action to determine adverse claims was evidently designed as a substitute for the equitable action to quiet title and the common-law action of ejectment, but it is broader and more comprehensive than either of these actions. Burleigh v. Hecht, 22 S. D. 301, 307, 117 N. W. 367. Whether the action is to be regarded as legal or equitable must be determined by the pleadings. Mitchell v. Black Eagle Min. Co. 26 S. D. 260, 265, 128 N. W. 159, Ann. Cas. 1913B, 85; Tracy v. Wheeler, 15 N. D. 243, 249, 6 L.R.A.(N.S.) 516, 107 N. W. 68; Powers v. First Nat. Bank, 15 N. D. 466, 470, 109 N. W. 361.

The general purpose and effect of the statute, as regards the equitable form of the action to determine adverse claims, is to extend the remedy to cases in which, by the settled rules of equity, no relief could be had, either because the adverse claim is not such as to constitute a technical cloud, or because the plaintiff is not in a situation to invoke the equitable jurisdiction. 17 Enc. Pl. & Pr. 290; Burleigh v. Hecht,

supra. The purpose of the action, as stated by the legislature, is to determine adverse or conflicting claims to real property.

The legislature intended to afford an easy and expeditious mode of determining all conflicting claims to land, whether derived from a common source or from different or independent sources (Walton v. Perkins, 33 Minn. 357, 23 N. W. 527), and thereby avoid a multiplicity of suits. Such legislative intent is clearly evidenced by the express direction that "the court in its decision shall find the nature and extent of the claims asserted by the various parties, and determine the validity, superiority, and priority of the same." Comp. Laws 1913, § 8153; Spencer v. Beiseker, 15 N. D. 140, 107 N. W. 189; Mitchell v. Black Eagle Min. Co. 26 S. D. 260, 265, 128 N. W. 159, Ann. Cas. 1913B, 85.

That a wife may maintain an appropriate action to protect the homestead right is generally recognized by the courts. Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684; Eve v. Cross, 76 Ga. 695; Adams v. Beale, 19 Iowa, 61; Mauldin v. Cox, 67 Cal. 390, 7 Pac. 804; Andrews v. Melton, 51 Ala. 400; Comstock v. Comstock, 27 Mich. 97; McKinnie v. Shaffer, 74 Cal. 614, 16 Pac. 509; Magneson v. Pacific Mfg. Co. 26 Cal. App. 52, 146 Pac. 69. The right to maintain such action is also recognized by § 5610, Compiled Laws 1913, which limits the time within which such action may be brought.

The statutes of this state provide: "All persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs except as otherwise provided in this chapter." Comp. Laws 1913, § 7403. "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of the questions involved therein; and in an action to recover possession of real estate the landlord and tenant thereof may be joined as defendants, *and any person claiming title or right of possession to real estate may be made party, plaintiff or defendant as the case may require, to any such action.*" Comp. Laws 1913, § 7404. "Of the parties to the action *those who are united in interest* must be joined as plaintiffs or defendants; but if the consent of anyone who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason therefor being stated in the complaint; . . ." Comp. Laws 1913, §

7406. "Any two or more persons having an estate or interest in or lien or encumbrance upon real property, under a common source of title, whether holding as tenants in common, joint tenants, copartners or in severalty, may unite in an action against any person claiming an adverse estate or interest in, or lien or encumbrance thereon, for the purpose of determining such adverse claim or establishing such common source of title, or declaring the same to be held in trust, or of removing a cloud upon the same. Comp. Laws 1913, § 8146.

It is a general rule of equity pleading that all persons who are materially interested in the event of the suit or in the subject-matter, however numerous, should be made parties, either as plaintiffs or defendants. 15 Enc. Pl. & Pr. 584. The reason of the rule is found in the principle of public policy enforced in courts of equity, that a decree must finally and completely determine the rights which all persons have in the subject-matter decided, so that the parties may safely obey and act upon the decree, and a multiplicity of suits or a circuity of proceedings may be avoided. 15 Enc. Pl. & Pr. 587.

"The governing motive of equity in the administration of its remedial system," says Pomeroy (Pom. Eq. Jur. 3d ed. § 114), "is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit. Its fundamental principle concerning parties is that all persons in whose favor or against whom there might be a recovery, however partial, and also all persons who are so interested, although indirectly, in the subject-matter and the relief granted, that their rights or duties might be affected by the decree, although no substantial recovery can be obtained either for or against them, shall be made parties to the suit; and it is not ordinarily a matter of substantial importance whether they are joined as plaintiffs or as defendants, although this question of procedure is regulated to a certain extent by rules based upon considerations of convenience, rather than upon any essential requirements of the theory. The primary object is that all persons sufficiently interested may be before the court, so that the relief may be properly adjusted among those entitled, the liabilities properly apportioned, and the incidental or consequential claims or interest of all may be fixed, and all may be bound in respect thereto by the single decree."

In another of his valuable works (Pom. Code Rem. § 331) the same author said: "The doctrine of equity, expressed in its most general form, is that all persons materially interested, either legally or beneficially, in the subject-matter of the suit, should be made parties to it, either as plaintiffs or as defendants, so that there may be a complete decree which shall bind them all."

This general equitable rule, it has been said, is one of convenience only, framed by the courts for the purposes of justice and to prevent the court from doing business by halves. Wiser v. Blachly, 1 Johns. Ch. 437; Elmendorf v. Taylor, 10 Wheat. 166, 6 L. ed. 294; 15 Enc. Pl. & Pr. 606. Story (Story, Eq. Pl. § 76C) says: "The truth is that the general rule in relation to parties does not seem to be founded on any positive and uniform principle, and therefore it does not admit of being expounded by the application of any universal theorem as a test. It is a rule founded partly in artificial reasoning, partly in consideration of convenience, partly in the solicitude of courts of equity to suppress multifarious litigation, and partly in the dictate of natural justice that the rights of persons ought not to be affected in any suit without giving them an opportunity to defend them."

Courts of equity therefore refused to enforce the rule where its application would tend to defeat the ends of justice, and certain recognized exceptions thereto became established. 15 Enc. Pl. & Pr. 606. Consequently the persons who, because of their interest, may or must be made parties, were divided by the courts and text-writers into classes. The Supreme Court of the United States divided parties into three classes, designated respectively as formal, necessary, and indispensable parties. While these three classes of parties clearly exist, it is somewhat difficult to distinguish between "indispensable" and "necessary" parties; and the great majority of the courts and text-writers use these two terms synonymously, and divide parties into two classes: First, necessary or indispensable parties; second, proper, but not indispensable, parties. 15 Enc. Pl. & Pr. 610.

In discussing this classification a learned legal writer said: "With respect to the nature of the interest which requires a person to be joined in a suit, there is, of course, no difficulty as to persons against whom relief is expressly asked. But with respect to those who are incidentally connected with the relief asked against others, the line of de-

marcation is less easy to draw. The interests, however, which require such joinder seem generally referable to one of the three following heads: First, interest in the subject-matter, which the decree may affect, and for the protection of which the owners are joined; secondly, concurrent claims with the plaintiff, which, if not bound by the decree, may be afterwards litigated; and, thirdly, liability to exonerate the defendant or to contribute with him to the plaintiff's claim." Adams, Eq. 8th ed. 314.

In discussing the same subject Pomeroy (Pom. Code Rem. § 329) said: "Necessary parties, when the term is accurately used, are those without whom no decree at all can be effectively made, determining the principal issues in the cause. Proper parties are those without whom a substantial decree may be made, but not a decree which shall completely settle all the questions which may be involved in the controversy, and conclude the rights of all the persons who have any interest in the subject-matter of the litigation."

The Supreme Court of the United States has defined necessary parties to be the "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Shields v. Barrow, 17 How. 130, 15 L. ed. 158; Barney v. Baltimore, 6 Wall. 280, 18 L. ed. 825.

"A proper party," said Sanborn, J., (Kelley v. Boettcher, 29 C. C. A. 14, 56 U. S. App. 363, 85 Fed. 55, 64), "as distinguished from one whose presence is necessary to the determination of the controversy, is one who has an interest in the subject-matter of the litigation, which may be conveniently settled therein." It has been suggested by another learned legal writer that the propriety of a person being made a party depends upon his interest in the *object,* rather than the subject-matter, of the suit. See Calvert, Parties, p. 10. See also Van Keuren v. McLaughlin, 21 N. J. Eq. 163.

These equitable doctrines were embodied in the statutory provisions quoted above. Pom. Code Rem. §§ 196, 200. The permissive joinder under the Codes has a very wide range of application. 30 Cyc. 117, 118. It will be noted that the statutory provisions are couched in permissive language. They provide that certain parties *"may* be joined

as plaintiffs,"—not *must* be; and that certain persons *"may* unite in an action,"—not *must* unite. This language is a recognition of the right to unite "proper but not indispensable parties," as distinguished from "necessary or indispensable parties," as parties plaintiff in an action in the courts of this state. In discussing these provisions of the Code of Civil Procedure, Pomeroy (Pom. Code Rem. § 331), said: "Those whose interests are adverse to the claim set up by the plaintiff, and who would therefore naturally resist such claims, should be brought into the action as defendants. On the other hand, those whose interests are concurrent with the interests of the principal plaintiff, who actually institutes and prosecutes the suit, should primarily be joined with him as coplaintiffs."

The present action, according to the averments of the complaint, was instituted for the purpose of quieting title to certain real property which constitutes the homestead of the plaintiffs,—to have the adverse claims of the defendants thereto adjudged null and void, and to have defendants enjoined from further asserting the same.

The setting apart of a homestead for the preservation of the home is part of the public policy of this state embodied in the Constitution itself. N. D. Const. § 208. The failure to make a declaration of the homestead by the head of the family "does not impair the homestead right." Comp. Laws 1913, § 5621. While the homestead exemption is claimed by the head of the family, it is intended primarily for the benefit of the family. Calmer v. Calmer, 15 N. D. 127, 106 N. W. 684; Bremseth v. Olson, 16 N. D. 242, 13 L.R.A.(N.S.) 170, 112 N. W. 1056, 14 Ann. Cas. 1155. If the head of the family dies, the homestead survives for the benefit of the surviving husband or wife and minor children. Comp. Laws 1913, §§ 5622–5631.

If the legal title to the homestead is held by the husband, the homestead interest of the wife is dependent upon his legal title. But the interests of both husband and wife are harmonious. The maintenance and enforcement of his legal title is not in conflict with the maintenance and protection of the homestead right. The wife is a beneficiary of the homestead and vitally interested in its preservation. She is entitled to occupy the homestead. It is her home. And while she is not always a necessary party to proceedings relating to the homestead, she will not be estopped by any decree or judgment affecting her homestead right,

unless she has been made a party to the proceeding. 13 R. C. L. p. 692, § 151. And it has been held that any unlawful invasion of her right to the peaceful and quiet enjoyment of her homestead is a legal wrong against her. Lesch v. Great Northern R. Co. 97 Minn. 503, 7 L.R.A.(N.S.) 93, 106 N. W. 955.

It has also been held that she may maintain an action to determine adverse claims to her homestead even though the legal title thereto is vested in her husband. McKinnie v. Shaffer, 74 Cal. 614, 16 Pac. 509; Magneson v. Pacific Mfg. Co. 26 Cal. App. 52, 146 Pac. 69. And while the question of her right to maintain such action was not raised, this was the form of action maintained by the wife in Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684. It has also been held that the minor children, while not necessary, are nevertheless proper, parties plaintiff to a suit brought by their mother to recover the homestead. Showers v. Robinson, 43 Mich. 502, 5 N. W. 988.

It is not necessary for us, however, in the instant case to consider or discuss the nature or extent of the homestead right. Nor is it necessary to determine whether the wife alone may maintain an action to determine adverse claims to a homestead where the legal title thereto is in the name of her husband, as this question is not necessarily involved in this case. The question here presented is whether she is a proper party plaintiff in an action instituted by her husband to determine adverse claims to such homestead.

We are agreed that, while a wife is not an indispensable party to such action, she is nevertheless a proper party. She is clearly interested in the object of, and the relief sought in, the action. She has an interest in the subject-matter of the litigation which cannot be concluded by decree unless she is made a party to the proceeding.

If the defendant had desired to enforce their claims against the premises, either by action to determine adverse claims or otherwise, it would have been manifestly proper for them to join both Patrick Sexton and Margaret Sexton as parties defendant. In fact this would have been absolutely necessary in order to obtain a judgment concluding the homestead rights, if any, of Margaret Sexton in the premises.

In considering the question of joinder of husband and wife as parties plaintiff in an action affecting the title to a homestead owned by one of them, the supreme court of Michigan, speaking through the celebrated

jurist Cooley, in Henry v. Gregory, 29 Mich. 69, said: "When the wife is owner of the land, and the husband occupies it with her, living upon it, any remedy that may be sought by them to protect their possession, or which in its final results may disturb their possession, should properly be sought by or against both. For, though the wife may have the exclusive title, the husband has a legal right to occupy jointly with her; and it is manifest there cannot be an adjudication covering the whole case so long as only one of the parties jointly entitled to the possession is before the court." See also Shoemaker v. Gardner, 19 Mich. 96; Hodson v. Van Fossen, 26 Mich. 68.

"What has been said above disposes of the only point raised and argued by the appellant. However, Mr. Justice Robinson has seen fit to raise a question which was in no manner raised or argued, or even suggested by the appellant. The question raised by Mr. Justice Robinson is that the statement in the complaint, with respect to the nature of the adverse claims of the defendants, transforms the action from a statutory action to determine adverse claims, to an action under the general system of pleading for the removal of a specific lien.

"The point made by Mr. Justice Robinson was ruled contrary to his contentions, by this court, in Blakemore v. Roberts, 12 N. D. 394, 96 N. W. 1029."

In discussing the point in Blakemore v. Roberts, supra, this court, speaking through Judge Morgan, said: "It is urged that the complaint is not framed under chapter 5, p. 9, Laws 1901, for the reason that it alleges that the lien relied on is a tax lien. *The contention is that plaintiffs have set forth more facts than are required by law, and are therefore not within its provisions. We see no force in the contention.* The fact that the complaint alleges that the lien relied on is held 'by reason of each of said certificates of tax sale' is not sufficient to warrant us in holding that a cause of action to determine adverse claims is not pleaded in view of all the other allegations of the complaint. These additional words do not make the complaint other or different than a complaint under chapter 5, id. The allegations show a cause of action based on a lien. Wilson v. Hooser, 72 Wis. 420, 39 N. W. 772. If the complaint showed on its face that the lien pleaded is an invalid one, the rule would be different. The fact that more facts are pleaded than necessary under the statute does not render the complaint demurrable if the

required facts are stated and no other or different cause of action is stated. *We find no warrant for holding that the plaintiffs have waived the statutory form of complaint or elected to plead another.* The defendant relies on the case of Swenson v. Greenland, 4 N. D. 532, 62 N. W. 603. That case is not applicable to this one. This complaint is authorized and its form prescribed by statute. It is therefore excepted from the principles applied in that case to an action for the foreclosure of a tax lien. The case of Walton v. Perkins, 28 Minn. 413, 10 N. W. 424, is also claimed to be in point. But we do not so understand it. In that case the complaint was defective as a complaint in an equitable action to cancel a mortgage which was a cloud upon a title to land. The court refused to sustain the complaint as sufficient under the statute which provided for settlement of adverse claims."

It will be noted that Mr. Justice Robinson also cites and relies on the case of Walton v. Perkins, supra. The holding in that case is stated in the syllabus therein as follows: "A complaint which is clearly one to remove a specified cloud upon title to real estate cannot, if it fail to show that the instrument under which defendant claims is invalid, be sustained against a demurrer, on the ground that the fact stated show that plaintiff might have brought an action under Gen. Stat. 1878, chap. 75, §§ 2, 3, to determine adverse claims upon real estate."

In the subsequent case of Buffalo Land & Exploration Co. v. Strong, 91 Minn. 84, 97 N. W. 575, the Minnesota supreme court had occasion to consider a complaint in an action to determine adverse claims, wherein plaintiff's title was alleged in detail and the alleged interests of the defendants were also set out with considerable particularity. In answering the contention that this rendered the complaint demurrable, the court said: "It was unnecessary to allege in detail plaintiff's chain of title, or to refer to the issuance of the patent to defendant Strong; and the fact that this was done, and also that the complaint alleged that the patent was issued through mistake and fraud, did not alter the nature of the action, nor add anything to the force of the pleading. These allegations could be rejected as surplusage, and a cause of action still be found in the complaint." The same question was also considered and the same result reached by the supreme court of South Dakota in the cases of Frum v. Weaver, 13 S. D. 457, 82 N. W. 579; Campbell v.

Equitable Loan & T. Co. 14 S. D. 483, 85 N. W. 1015; Bennett v. Darling, 15 S. D. 1, 86 N. W. 751.

An examination of the complaint set forth in the beginning of this opinion, clearly discloses that the pleader intended to state a statutory cause of action to determine adverse claims. The complaint contains every averment which the statute requires to be contained in such complaint, and the prayer for relief follows the statutory form. The allegations regarding the nature of the liens of the defendants and the reason for their invalidity certainly cannot prejudice the defendants. These additional allegations are in no manner inconsistent with the plaintiff's claim of ownership, or with the allegation in the complaint that the defendants claim certain estates or interests in, or liens or encumbrances upon, the premises, adverse to the plaintiffs; or with the prayer that such adverse claims be adjudged null and void.

It is interesting to note that Mr. Justice Robinson appeared as counsel for the defeated parties in the two cases of Blakemore v. Roberts, 12 N. D. 394, 96 N. W. 1029, and Bennett v. Darling, 15 S. D. 1, 86 N. W. 751. And the views expressed by him in his dissenting opinion in this case are in accord with the argument advanced by him in those two cases. The South Dakota supreme court held that his contention was "not sustainable." And this court said that it could "see no force in his contention." Those decisions represented the unanimous opinions of the then justices of the respective courts, and they also represent the views of all the present members of this court, with the obvious exception of Mr. Justice Robinson.

The order appealed from must be affirmed. It is so ordered.

ROBINSON, J. (dissenting). In this case there is a demurrer to the complaint of Margaret Sexton on the ground that it does not state facts sufficient to constitute a cause of action. The question of misjoinder of parties is not at all presented, as there is no demurrer on that ground, and as a demurrer lies only for a defect or want of parties, plaintiff or defendant, and not for any excess from parties or the joinder of needless parties.

The complaint avers that Margaret Sexton is the wife of Patrick Sexton, and joins with him in this action to quiet title to certain land which is owned by Patrick Sexton and which is occupied as a home-

stead by the plaintiffs. Then it avers that the action is for the purpose of freeing title to such premises of all liens and encumbrances claimed by the defendants, which liens and encumbrances have grown out of mortgages signed by her husband without being signed or acknowledged by the said Margaret Sexton. Then it avers that defendant's claim certain estates in the land adverse to the plaintiff, and makes a demand for judgment quieting title.

The complaint is neither fish nor fowl. It is not a bill in equity, and it is not a proper complaint under chapter 5, Laws of 1901, for the determination of adverse claims. In Walton v. Perkins, 28 Minn. 413, 10 N. W. 424, the distinction between those two actions is very clearly made, and it is there held that when the complaint is one to remove a specified cloud upon title to real estate it must show the cloud and state facts showing that it is void. And if it fail to show that the instrument under which the defendant claims title is invalid, then the complaint is demurrable, even though it state facts sufficient in an action to determine adverse claims, and the reasoning of the court is sound and logical, because, in an action to remove a specified cloud, the plaintiff is entitled to recover costs, even though the defendant does not appear, but in an action to determine adverse claims under the statute the plaintiff recovers no costs in case of no defense. The complaint merely asserts that the defendants make an adverse claim, without showing that the defendants do plaintiff any wrong in making it. And, as we held in a recent case involving title to school lands, the answer is in reality the commencement of an action by the defendant against the plaintiff, and an answer claiming title sets forth a counterclaim, to which the plaintiff must reply. The object of the action is to force one claiming an adverse interest or lien, to establish or abandon his claim.

With respect to the claim of defendant, the position of the parties is the reverse of that occupied by parties in an ordinary action. The defendant becomes practically the plaintiff, and takes the affirmative in pleading and proof, while the plaintiff becomes practically the defendant and defends against the claims.

In an ordinary action the plaintiff must tender the issues to the defendant, and, if defendant takes issue on facts alleged, the plaintiff must prove enough of them to entitle him to recover. An action under the statute is brought to compel defendant to tender issues unless he

chooses to abandon his claim. In this case the complaint is one to remove a specified cloud arising from mortgages on homesteads, and as such it does not state facts sufficient to constitute a cause of action.

The demurrer should be sustained.